IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JEANELLE LAWSON,**<br><br>　　　　**PLAINTIFF,**<br>　v.<br><br>**RESOURCES FOR HUMAN DEVELOPMENT, INC.**<br><br>　　　　**DEFENDANT.** | **Civil Action No.: _____**<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT AND JURY DEMAND

Plaintiff Jeanelle Lawson, by and through her undersigned attorneys, Bell & Bell LLP, hereby files the following Complaint and Jury Demand ("Complaint").

## PRELIMINARY STATEMENT

1. This is an action for an award of damages, punitive damages, attorneys' fees and other relief on behalf of Plaintiff Jeanelle Lawson, a former employee of Resources for Human Development, Inc. ("RHD" or "Defendant"). Ms. Lawson was harassed and discriminated against on the basis of her disability and/or perceived disability, and was retaliated against for seeking accommodations of her disability, culminating in her wrongful termination. RHD also failed to engage in the requisite good-faith, interactive process with respect to accommodating Ms. Lawson's disability.

2. This action is filed pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq. and the Family and Medical Leave Act, 29 U.S.C. § 2611, et seq. ("FMLA").

## JURISDICTIONAL STATEMENT

3. This Court has original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States pursuant to 28 U.S.C. §§ 1331 and 1391.

4. The jurisdiction of this Court is also invoked pursuant to 28 U.S.C. § 1343(4), which grants the District Court original jurisdiction in any civil action authorized by law to be commenced by any person to recover damages to secure equitable or other relief under any act of Congress providing for the protection of civil rights.

5. This Court has supplemental jurisdiction over any Pennsylvania state law claims pursuant to 28 U.S.C. § 1367.

6. All conditions precedent to the institution of this suit have been fulfilled. On July 29, 2020, Plaintiff timely filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), which was dual-filed as a Complaint with the Pennsylvania Human Relations Commission ("PHRC"). On February 25, 2021, the EEOC issued a Notice of Right to Sue to Plaintiff. This action has been filed within ninety (90) days of Plaintiff's receipt of said Notice.[1]

## VENUE

7. This action properly lies in the Eastern District of Pennsylvania, pursuant to 28 U.S.C. § 1391(b).

---

[1] It has been less than one year since Ms. Lawson dual-filed her Charge of Discrimination as a Complaint with the Pennsylvania Human Relations Commission for Defendant's violations of the Pennsylvania Human Relations Act, 43 P.S. § 951, et seq. ("PHRA"). Ms. Lawson will seek to amend her Complaint in this matter to add her PHRA claims once she has exhausted her administrative remedy with respect to those claims.

8. This action properly lies in the Eastern District of Pennsylvania because the claims and significant activities associated with those claims arose in this judicial district, and Plaintiff was employed and terminated by Defendant in this judicial district.

## PARTIES

9. Plaintiff Jeanelle Lawson is an adult female citizen and resident of Philadelphia, Pennsylvania and the United States of America.

10. Ms. Lawson is a qualified individual with a disability within the meaning of the ADA.

11. Ms. Lawson's disability affects a major bodily function and substantially limits one or more major life activities.

12. Ms. Lawson's disability has affected her for a period far in excess of six months.

13. Defendant is a national human services nonprofit organization with a headquarters located at 4700 Wissahickon Avenue, Suite 126, Philadelphia, Pennsylvania 19144.

14. Ms. Lawson worked for RHD at its Woodstock Family Center Program ("Woodstock"), located at 1981 N. Woodstock Street, Philadelphia, Pennsylvania 19121.

15. At all relevant times, Defendant is and has been an employer employing more than fifty (50) employees.

16. At all relevant times, employees of Defendant acted as agents and servants for Defendant.

17. At all relevant times, employees of Defendant were acting within the scope of their authority and in the course of their employment under the direct control of Defendant.

18. At all times material hereto, Defendant acted by and through its authorized agents, servants, workmen and/or employees acting within the course and scope of their employment with Defendant and in furtherance of Defendant's business.

19. At all relevant times hereto, Plaintiff Jeanelle Lawson was an "employee" of Defendant within the meanings of the laws at issue in this suit and is accordingly entitled to the protection of said laws.

20. At all relevant times hereto, Defendant was an "employer" and/or "person" under the laws at issue in this matter and is accordingly subject to the provisions of said laws.

21. During her employment, Defendant regarded Ms. Lawson as disabled.

22. This cause of action arose out of transactions or occurrences that took place in whole or in part in Philadelphia, Pennsylvania.

23. Defendant conducts substantial business within Philadelphia, Pennsylvania.

24. This Honorable Court has personal jurisdiction over the Defendant.

## FACTS

25. Ms. Lawson is a former employee of Defendant Resources for Human Development, Inc.

26. Ms. Lawson worked for RHD at the Woodstock location from her hire on January 14, 2019 through her wrongful termination on February 3, 2020.

27. During her employment with RHD, Ms. Lawson performed her duties in a satisfactory and professional manner.

28. Despite her consistent performance, Ms. Lawson was discriminated against on the basis of her disability or perceived disability and was terminated as a result of discrimination and in retaliation for seeking accommodations of a disability or perceived disability.

29. Additionally, RHD failed to engage in the requisite good-faith, interactive process with respect to accommodating Ms. Lawson's disability.

30. In the Spring or Summer of 2019, Ms. Lawson disclosed to RHD's Human Resources Department ("HR") that she suffers from fibromyalgia and requested a form for accommodations pursuant to the Americans with Disabilities Act ("ADA").

31. In December of 2019, Ms. Lawson began seeing a new neurologist.

32. In or about December 2019 or January 2020, Ms. Lawson's neurologist diagnosed her with Chronic Inflammatory Demyelinating Polyneuropathy ("CIDP") and Small Fiber Neuropathy ("SFN").

33. In order to treat Ms. Lawson's disabilities, Ms. Lawson's doctor informed her that she needed to receive Intravenous Immunoglobulin ("IVIG") Therapy.

34. Ms. Lawson informed HR that she may have to undergo IVIG Therapy in relation to her disabilities and requested an application to take leave pursuant to the FMLA.

35. During her employment with RHD, Ms. Lawson reported to Dr. Michelle Burns, who serves as the Director of Woodstock.

36. Dr. Burns was made aware of Ms. Lawson's request for an application to take FMLA leave.

37. Along with Dr. Burns and the Human Resources Department, Hesi McMickens, Operations Manager, and Roslyn Robinson, Education Coordinator, were also aware of Ms. Lawson's disabilities.

38. After Ms. Lawson requested FMLA leave paperwork, Ms. Lawson's supervisor, Dr. Burns, began harassing Ms. Lawson.

39. Dr. Burns berated Ms. Lawson for not informing her about taking FMLA leave, even though Ms. Lawson had not yet received approval from her insurance to begin IVIG

therapy, and therefore had not yet submitted the paperwork to officially request FMLA leave.

40. The call was so aggressive that it left Ms. Lawson extremely upset, stressed, and fearful of losing her job.

41. From the moment that Ms. Lawson requested the FMLA paperwork for her disabilities, it was apparent that Dr. Burns held a discriminatory animus against her.

42. In another example of harassment and discrimination, RHD has a policy where all visitors must sign in at the front desk.

43. During the week of January 6, 2020, a man visited RHD Woodstock to assess and disassemble two old commercial washers.

44. On January 14, 2020, the man visited the center again without signing in at the front desk.

45. Dr. Burns had not informed Ms. Lawson that the man would be returning to the facility.

46. Dr. Burns never informed Ms. Lawson that another employee had been instructed to handle the issue or that she should not get involved.

47. After witnessing that the man had failed to sign in, Ms. Lawson appropriately approached the man, along with Noemi Castillo, Direct Support Professional (DSP) supervisor at RHD, to ask if anyone knew that he was coming.

48. The man became irate with both Ms. Lawson and Ms. Castillo and left.

49. Ms. Lawson then sent an email to Dr. Burns about the interaction.

50. Shortly thereafter, Dr. Burns called Ms. Lawson and asked Ms. Lawson why she had asked the man if anyone knew he was coming, stating that Ms. Lawson should have called her.

51. Ms. Lawson explained the nature of the interaction that did not provide her with time to call Dr. Burns, but Dr. Burns continued to question Ms. Lawson.

52. Dr. Burns then accused Ms. Lawson of gossiping about the man and his visit to Woodstock when all Ms. Lawson had done was take proper actions to adhere to company policy and report the interaction to Dr. Burns in a timely manner.

53. In contrast, and in another example of discriminatory, harassing and retaliatory behavior by Dr. Burns, despite criticizing Ms. Lawson for asking the unknown male if anyone knew that he was coming, Dr. Burns criticized Ms. Lawson the week prior regarding her failure to question a teenage girl in the dining hall who Ms. Lawson assumed was a new participant.

54. Dr. Burns also mocked Ms. Lawson in relation to her disabilities.

55. Referencing an email Ms. Lawson had sent to Dr. Burns, Dr. Burns commented, "Remember, you're a seasoned professional. Isn't that what you said in your email?"

56. This comment is highly offensive and discriminatory when stated to an individual who suffers from disabilities that affect her mental state.

57. This comment left Ms. Lawson feeling uncomfortable and humiliated.

58. Ms. Lawson also faced retaliation for taking steps to inquire into taking FMLA leave as an accommodation to treat her disabilities.

59. As the Fiscal Administrator, Ms. Lawson was a member of the administrative/supervisory team at Woodstock and reported to the Director.

60. However, in mid-January 2020, Ms. Lawson was effectively demoted as her status in the organizational chart changed from reporting to the Director to reporting to the Operations Director.

61. Ms. Lawson had always reported to the Director, all her colleagues reported to the Director, and her job description stated that she was to report to the Director.

62. Ms. Lawson was not informed beforehand of the organizational change to her position or job description.

63. In a final act of discrimination and retaliation against Ms. Lawson for her inquiry into seeking FMLA leave and accommodations for her disabilities, Ms. Lawson was terminated on February 3, 2020.

64. RHD had no legitimate grounds to terminate Ms. Lawson.

65. RHD claimed to have terminated Ms. Lawson because Ms. Lawson had purchased a Triple A card and membership for the company van without Dr. Burns' specific approval, and because Ms. Lawson allegedly wrongfully used or allowed others to use SEPTA key cards.

66. Ms. Lawson did not engage in any wrongful acts warranting termination.

67. Notably, RHD made no meaningful attempt to investigate the situation or confirm these alleged purchases or uses.

68. The above facts indicate that, after Ms. Lawson disclosed her disability and requested accommodations for her disability, RHD sought and used any excuse it had to terminate Ms. Lawson.

69. The timing of Ms. Lawson's termination, coupled with the treatment RHD subjected her to after disclosing her disability and requesting accommodations, and the lack of any legitimate justification for her termination, indicates that the real reason for Ms. Lawson's termination was discrimination and retaliation on the part of Defendant.

70. RHD also failed to engage in the requisite good-faith, interactive process with respect to accommodating Ms. Lawson's disability.

71. Ms. Lawson's termination was pretextual.

72. Ms. Lawson's termination was wrongful.

73. Despite her loyalty, dedication and consistent performance, and given her treatment during her employment with RHD (including, but not limited to, her wrongful termination), RHD harassed, discriminated and retaliated against Ms. Lawson on the basis of her disability or perceived disability, and retaliated against her for requesting accommodations, including her request for leave under the FMLA.

74. Ms. Lawson has suffered mental anguish and severe emotional distress as a direct and proximate result of the actions and inactions of Defendant.

75. Defendant and its agents acted with the intent of causing or with reckless disregard for the probability that their actions would cause Ms. Lawson severe emotional distress.

76. Ms. Lawson has suffered financial losses, which include, among other things, lost wages, and an obligation for attorneys' fees and costs of bringing suit, as a direct and proximate result of the actions and inactions of Defendant.

**COUNT I**
**The Americans with Disabilities Act, 42 U.S.C. § 12101, et seq.**

77. Plaintiff Jeanelle Lawson repeats and incorporates by reference the allegations of all previous paragraphs as if fully set forth at length herein.

78. Based on the foregoing, Defendant engaged in unlawful employment practices in violation of the Americans with Disabilities Act.

79. In discriminating against and harassing Ms. Lawson on the basis of her disability and/or because Defendant regarded Ms. Lawson as disabled, in failing to accommodate Ms.

9

Lawson and failing to engage in the requisite good faith, interactive process with respect to accommodating Ms. Lawson, Defendant violated the ADA.

80. Said violations were intentional and willful.

81. Said violations warrant the imposition of punitive damages.

82. As the direct and proximate result of Defendant's violation of the Americans with Disabilities Act, Plaintiff Jeanelle Lawson has sustained loss of earnings, loss of severance, retirement and other benefits, loss of incentive and bonus payments, severe emotional and psychological distress, loss of self-esteem, loss of reputation and opportunity for career advancement, loss of future earning power, as well as back pay, front pay, and interest due thereon, and has incurred attorneys' fees and costs.

## COUNT II
### The Family and Medical Leave Act, 29 U.S.C. § 2611, et seq.

83. Plaintiff repeats and incorporates by reference the allegations of all previous paragraphs as if fully set forth at length herein.

84. Defendant's conduct, in interfering with Ms. Lawson's FMLA rights, and in retaliating against Ms. Lawson for attempting to take leave pursuant to the Family and Medical Leave Act, violated the FMLA.

85. Defendant's violations of the FMLA were intentional and willful, as Defendant knew or should have known the requirements of the FMLA, but disregarded those requirements.

86. Defendant's violations of the FMLA warrant the imposition of liquidated damages.

87. As a direct and proximate result of Defendant's violations of the FMLA, Ms. Lawson has sustained a loss of earnings, severe emotional and psychological distress, personal embarrassment, loss of self-esteem, loss of earning power, back-pay, front-pay, interest due thereon, and has incurred attorneys' fees and costs.

88. Plaintiff is now suffering and will continue to suffer irreparable harm and monetary damages as a result of Defendant's actions unless and until this Court grants the relief requested herein.

## **PRAYER FOR RELIEF**

89. Plaintiff Jeanelle Lawson repeats and incorporates by reference the allegations of all previous paragraphs as if fully set forth at length herein.

**WHEREFORE**, Plaintiff Jeanelle Lawson respectfully requests that this Court enter judgment in her favor and against Defendant and Order:

a. Appropriate equitable relief;

b. Defendant to compensate Plaintiff with a rate of pay and other benefits and emoluments of employment to which she would have been entitled had she not been subjected to unlawful discrimination, harassment and retaliation;

c. Defendant to compensate Plaintiff with the wages and other benefits and emoluments of employment lost because of its unlawful conduct;

d. Defendant to pay Plaintiff punitive damages;

e. Defendant to pay Plaintiff compensatory damages for future pecuniary losses, pain and suffering, inconvenience, mental anguish, loss of employment and other nonpecuniary losses as allowable;

f. Defendant to pay Plaintiff's costs of bringing this action and her attorneys' fees;

g. Plaintiff be granted any and all other remedies available pursuant to the ADA and the FMLA; and

h. Such other and further relief as is deemed just and proper.

## JURY DEMAND

Plaintiff hereby demands trial by jury as to all issues so triable.

*/s/ Christopher A. Macey, Jr.*
Christopher A. Macey, Jr., Esquire
Bell & Bell LLP
One Penn Center
1617 JFK Blvd. – Suite 1254
Philadelphia, PA  19103

*Attorneys for Plaintiff Jeanelle Lawson*

Dated:  May 25, 2021